### SCOTT et al. v. LOTT. (No. 6795.) *

(Court of Civil Appeals of Texas. San Antonio. Nov. 1, 1922. On Motion for Rehearing Nov. 28, 1922. On Second Motion for Rehearing Jan. 31, 1923.)

1. **Compromise and settlement ⬳15(2)—Reliance on compromise after commencement of suit held abandonment by defendant of his defenses and counterclaims.**

    Where the parties entered into a compromise after the suit had been commenced, defendant, in relying solely on such compromise, abandoned his various defenses and counterclaims on which recovery was first sought.

2. **Judgment ⬳248—Conformity to pleadings essential.**

    Under the direct provisions of Rev. St. 1911, art. 1994, the judgment must conform to the pleadings.

3. **Compromise and settlement ⬳20(2)—Plaintiff could elect between enforcement of executory contract of compromise or to be remitted to original cause of action.**

    On breach of an executory contract to compromise, made after the commencement of suit, plaintiff had the right to elect either to enforce such contract or to be remitted to his original cause of action pleaded.

4. **Compromise and settlement ⬳6(1)—Mutual efforts of parties to settle differences carries valuable consideration.**

    The mutual efforts of parties to a litigation to settle their differences carry with them a valuable consideration, and the compromise will be upheld when it is possible to do so.

5. **Fraud ⬳59(3) — Measure of damages stated.**

    The measure of damages for fraudulent representations inducing the making of a land contract is ordinarily the difference in the value of the land at the price agreed upon on the day the contract is made and the real value of the land itself when the representation was made inducing the purchase.

6. **Vendor and purchaser ⬳349—Measure of damages and evidence supporting it need not be alleged in suit for refusal to perform contract.**

    When a vendor wrongfully refused to perform his contract, it is sufficient only to allege the substance of the contract and its breach, in general terms, the damages suffered by reason of such breach, and it is not necessary to plead specially the measure of damages or the evidence to support it, for the correct measure is a matter of law under the general allegations of the contract, the breach and the resultant damages.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction February 21, 1923.

On Motion for Rehearing.

**7. Judgment ⬤⬤248—Judgment for more than sued for erroneous.**

A judgment for breach of a compromise agreement, involving the transfer of land, alleged not to exceed $23 per acre, based upon a finding by the jury that its value was $35 per acre, *held* excessive and erroneous, as supported neither by the pleadings nor the evidence.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by G. R. Scott and others against Wm. C. Lott. Judgment for defendant, and plaintiffs appeal. Affirmed and rendered, on condition of filing remittitur.

C. A. Davies, of San Antonio, and Boone, Pope & Savage, of Corpus Christi, for appellants.

Don A. Bliss and Lewright & Lewright, all of San Antonio, for appellee.

COBBS, J. On October 19, 1918, the appellants filed this suit to recover the principal, interest, attorney's fees, and protest fees on the two Lott notes, and sued out an attachment alleging statutory grounds. A writ was issued in pursuance thereof and levied on W. C. Lott's undivided one-half interest in a tract of land out of block No. 16, N. C. B. 418, and on his undivided one-half interest in another lot known as Avenue C property, all in San Antonio, Tex.

A motion was filed to quash this levy, which was sustained by the court on March 8, 1919, and therefore another attachment was sued out by appellants on same day and levied upon the last-named property. It does not appear that any disposition was made of this attachment by the court, if any was made. This case was finally tried on the alleged compromise agreement between the parties. As the pleadings originally stood on the part of appellants, it was a suit to recover on promissory notes, and, on the part of appellee, it was an effort to recover by way of cross-action a large sum of money for damages, both actual and punitory, based upon the alleged wrongful suing out by appellants and causing the issuance and levy of attachment liens upon appellee's land, with malice and without probable cause.

While the cause was about to be called for trial, having been set down for trial on the 13th day of December, 1920, on the issues then made in the case by the pleadings, it was passed by the court to enable the parties to compromise their differences. So on December 13, 1920, the parties passed the trial to arrange the details of the settlement, and agreed upon a compromise or settlement of all issues involved.

The quitclaim deed from W. E. Pope, as agreed upon, was signed conveying the Bee county land to appellee; a quitclaim deed from B. L. Lombard to the Bee county land; the two notes signed by appellee, one for the $300 and the other for $2,850, and the deed of trust of appellee executed on the one-half interest in the property on Avenue C. San Antonio, Tex., all duly signed and executed, together with other various original papers, which were delivered to and left with C. A. Davies, the agreed trustee, to hold for both parties. Appellee did not go on further with the agreement for the reason he learned that the Welder first lien amounted to $21 per acre instead of $15; in fact, there remained nothing for him to do to complete the agreement for the other things to be done to complete the agreement were to be done and performed by appellants. So appellee demanded that appellants comply with the contract and tender him the deed with the extension from Welder, showing there was only a prior lien thereon of $15 per acre against the land and the back taxes, and appellee stated and reiterated his willingness to go on with the compromise agreement, and demanded that appellant complete his part within the stipulated 30 days. Appellee never repudiated the agreement or refused to comply with its terms but insisted upon the enforcement all the time.

This case was tried with a jury upon special issues, and upon their findings the court entered a judgment in favor of appellee for the sum of $4,451, together with 6 per cent. interest per annum from date of the judgment against appellants.

Special issues were submitted to the jury as follows: Bearing in mind the foregoing instruction, you will please answer the following questions:

Question No. 1. Did the parties to this suit make an agreement of settlement on or about December 13, 1920, such as is alleged in paragraph No. 2 of defendant's first supplemental answer herein? Answer this question "yes" or "no." Answer: Yes.

Question No. 2: What was the reasonable market value per acre, of fractional section No. 99, on December 13, 1920? Answer stating the amount per acre. Answer: $31.

If you have answered question No. 1 in the affirmative, then you need not answer question No. 3 and the questions that follow, but if you have answered question No. 1 in the negative, then answer question No. 3 and the questions that follow. Then followed special issues Nos. 3, 4, 5, 6, and 7 not necessary to set out here because not answered under the direction of the court. The charge of the court eliminated all the issues except that involving the question of the compromise and measure of damages.

In view of the fact that the case was tried upon appellee's theory seeking to enforce the compromise agreement and settlement, or, in the alternative, for damages by reason of the breach thereof, we are confined to the de-

---

termination of that question and the issues growing out of it.

Appellee files many objections urging this court not to consider any of appellants' assignments and propositions. There is much merit in the motion. We shall, however, consider the same, though the assignments and propositions are not very satisfactory, but the alleged erroneous questions of law involved are sufficiently raised. On account of relying upon and electing to enforce the agreement to compromise, the appellee thereby in fact abandoned his cross-action for damages and stands upon the compromise settlement and suit by cross-action for its enforcement, or, in the alternative, for the damages caused by the breach, and incidentally to offset the amount he owed for the land, which left the appellants with the right to recover on the obligations sued upon, as a matter of course, which appellee admits. Appellee alleged, in substance, the land (Bee county) was to be conveyed to him with a prior lien only thereon due Welder, agreed upon not to exceed $15 per acre, and the compromise settlement was made on that basis. Ascertaining afterwards that the debt due thereon amounted to about $21 per acre, appellee was not called upon to go further with the contract until the amount of the Welder lien was reduced to $15 per acre, which, on December 13, 1920, appellants represented the land stood charged with, but at the time of filing this cross-action exceeded $23 per acre. Appellee averred his readiness and willingness to perform the terms of the compromise.. He prayed for specific performance and in the alternative for the damages he sustained by reason of their failure to perform, which he alleged to be $5,000. The cross-action does not definitely allege and show the separate items of damages that created that sum, except in the most general way, but good against a general demurrer.

Appellants challenge, in their first point, the right of appellee to recover: (a) Because he admitted the execution and delivery of the notes; (b) because, on the submission of the case, he abandoned all defenses of counterclaim and relied upon the alleged compromise, which was wholly executory and which he had declined to execute, and (c) he sought specific performance of the alleged compromise and in the alternative general damages for failure to comply with its terms, when at the very time he sought relief had placed himself in a position where he could not perform the compromise by conveying the Avenue C property covered by the deed of trust, securing his notes, provided for in the compromise agreement. In regard to that part of the first point and the first proposition raised on the first to third assignments, the fact that appellee admitted the execution and delivery for value of the notes sued on, in no way affected the appellants' rights to seek the performance of the con-tract or damages in the alternative, because the legal and only effect of that admission was to permit a judgment to be entered thereon without further proof in favor of appellants.

[1] We agree with appellants that, by reason of the action of appellee in relying solely on the alleged compromise, he abandoned the various defenses and counterclaims upon which recovery was first sought on the various grounds formerly pleaded, in the cross-action, but that did not prevent him from relying upon the alleged compromise subsequently made, though it may be admitted such was executory.

[2, 3] And we agree fully with what is held in the authorities cited by appellants, among other things, to the effect that the judgment must conform to the pleadings. R. S. 1994; Menard v. Sydnor, 29 Tex. 257. The judgment here does substantially, as stated, conform to the pleadings, and that appellee has sufficiently pleaded and proven that he has offered to carry out and perform the contract and still stands ready and willing to do so, but that appellants have breached their contract in the most important essential, in not relieving the land of the Welder lien upon it in excess of $15 per acre. 5 Pomeroy Eq. Jur. (2d Ed.) §§ 2227, 2228; Gober v. Hart, 36 Tex. 139; Ferguson v. Sanders (Tex. Civ. App.) 176 S. W. 784; Fink v. Hough (Tex. Civ. App.) 153 S. W. 679. And in such suits, upon the breach of an executory contract to compromise, he had the election of seeking, either to enforce that, or be remitted to his original cause of action pleaded. 8 Cyc. 536; 12 Corpus Juris, pp. 315–357; Tomson v. Heidenheimer (Tex. Civ. App.) 40 S. W. 425, 5 R. C. L. p. 895, § 18, and page 901, § 23.

In this suit on the part of appellee it was an election of the alternative for damages for which appellee is held bound. Blythe v. Speake, 23 Tex. 429; Grabenheimer v. Blum, 63 Tex. 374; Greenwall Theatrical Circuit Co. v. Markowitz, 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302.

[4] The mutual efforts of parties to settle their differences carry with them a valuable consideration, and certainly have ever met the sanction and approval of courts. It is laudable for them to compose their differences out of court, and in so doing are always upheld when possible to do so. Rivers v. Campbell (Tex. Civ. App.) 111 S. W. 190; U. L. & Irrigation Co. v. Fleming (Tex. Civ. App.) 225 S. W. 843; Grisham v. Ward (Tex. Civ. App.) 179 S. W. 893; Hilliard v. White (Tex. Civ. App.) 31 S. W. 553; Little v. Allen, 56 Tex. 133; Camoron v. Thurmond, 56 Tex. 33–35; Davenport v. Shepherd (Tex. Civ. App.) 197 S. W. 729; Bost v. Barringer (Tex. Civ. App.) 202 S. W. 791; Bedford v. Simono (Tex. Civ. App.) 79 S. W. 97; Brock v. Jones, 16 Tex. 461; Blythe v. Speake, 23 Tex. 429.

It makes no difference whether Pope was guilty of the alleged fraud or not, in making the statement as to the amount he represented due on the land as a prior lien to Welder. When he represented it did not exceed $15, appellee believed it, and, so believing, entered in the compromise which was made upon that representation. Wortman v. Young (Tex. Civ. App.) 221 S. W. 660; Watson v. Baker, 71 Tex. 739, 9 S. W. 867; Mitchell v. Zimmerman, 4 Tex. 80, 51 Am. Dec. 717; McCord-Collins Co. v. Levi, 21 Tex. Civ. App. 109, 50 S. W. 606; Harris v. Shear (Tex Civ. App.) 177 S. W. 136.

[5] The measure of damages, in such cases, ordinarily is the difference in the value of the land at the price agreed upon on the day the contract is made and the real value of the land itself when the representation was made inducing the purchase. Now then, the price agreed upon on the 13th day of December, 1920, based upon Pope's representations, was $15 per acre. There were 507 acres of the Bee county land multiplied by $15 per acre, the agreed price, gives the represented value of $7,605. The jury found the real value at that time to be $15,717. The Welder debt at $15 per acre would have amounted, as above stated, to $7,605, to which add $511 unpaid taxes; then further add $3,150 that appellee was to pay for the land, as evidenced by his two notes, which makes $11,266. This represents the value of the land at that time, say $15,717. Now the difference between those sums represents the sum of $4,451, the amount of the judgment. This rule seems to be also the one applied and pronounced to be the correct one in Nicholson v. Wilson (Tex. Civ. App.) 240 S. W. 614; Kempner v. Heidenheimer, 65 Tex. 591; Bowen v. Speer (Tex. Civ. App.) 166 S. W. 1183; Kempner v. Cohn, 47 Ark. 519, 1 S. W. 869, 58 Am. Dec. 775; Nevins v. Thomas, 80 Tex. 597, 16 S. W. 332. There is no better settled and fixed principle of the law than that the injured party should always when possible be compensated for his damages. West Lumber Co. v. Cummings Export Co. (Tex. Civ. App.) 196 S. W. 552; Garcia v. Yzaguirre (Tex. Com. App.) 213 S. W. 236; Spaulding v. Smith (Tex. Civ. App.) 169 S. W. 627; Winters v. Coward (Tex. Civ. App.) 174 S. W. 940; Phillips v. Herndon, 78 Tex. 378, 14 S. W. 857, 22 Am. St. Rep. 59; Monroe v. South (Tex. Civ. App.) 64 S. W. 1014; Massie v. State Bank, 11 Tex. Civ. App. 280, 32 S. W. 797; Smith v. Lander (Tex. Civ. App.) 89 S. W. 19.

[6] When a vendor wrongfully refuses to perform his contract, it is sufficient only to allege the substance of the same and its breach, in general terms the damages suffered by reason of such breach. It is not necessary to plead specially the measure of his damages or the evidence to support it, for the correct measure is a matter of law under the general allegations of the contract, the breach, and resultant damages. Crum v. Thomason (Tex. Civ. App.) 181 S. W. 803; City of San Antonio v. Pizzini (Tex. Civ. App.) 58 S. W. 635. There was no special exceptions presented to the pleading, nor are there any assignments presented to cover any special objections to its sufficiency. There is no merit in the objection that the appellee had placed himself beyond the power to specifically perform this contract by selling the Avenue C property. Appellants refused to carry out the contract and repudiated themselves the compromise agreement. They asked no relief that entitled them to raise this question, and they, therefore, have waived, by their own conduct, the right to complain. Besides that, the Avenue C property was not sold by appellee until after the trial of the case in November, 1921. There was no reason why he should not have sold it after the appellants breached the contract and themselves refused to carry it out, or can at this time be heard to complain because the property was sold after they themselves breached the compromise agreement when they might have received the benefits of it. After the breach, it was nowhere involved in this suit for damages growing out of appellants default in not complying with their alleged agreement to compromise. We do not think the court committed any error in the rulings on the admissibility of the evidence so many times complained of, nor in respect to the measure of damages proven. There was a large amount of testimony introduced pro and con, but the jury solved it in favor of appellee, and there is ample evidence to sustain it.

We have discussed at length the real questions raised in the case, and they grow out of the alleged compromise, and, having carefully examined them and all other assignments, and finding no error assigned that should cause a reversal of this case, we overrule each and all of the assignments, points, and propositions, and affirm the judgment of the trial court.

On Motion for Rehearing.

Defendant's first supplemental answer in respect to the alleged representations that appellant Pope made, is that he should immediately get busy and arrange matters with said John J. Welder so as to reduce the mortgage debt of said Welder to not more than $15 per acre, and so as to obtain a reasonable extension of time of payment on said sum per acre to said Welder, all to the end that said compromise agreement might be fully consummated within 30 days from December 13, 1920. Despite said facts, plaintiffs herein have failed and refused, and still fail and refuse, to observe or carry out the terms and provisions of said compromise agreement and further alleged, "the reasonable market value of said land involved herein did not exceed on December 13, 1920,

and does not now exceed the sum of $23 per acre, on the open market." Appellee's prayer is "for his damages sustained by reason of the failure and refusal of plaintiffs herein to comply with the terms of said compromise settlement. In this connection this defendant says that, by reason of said wrongful refusal and failure of plaintiffs to observe the terms of said compromise settlement this defendant has been damaged in the sum of $5,000."

[7] The finding of the jury that the land on the day of the trial was of the market value of $35 per acre is greatly more than appellee sued for; he alleged it not to exceed $23 per acre. It was alleged that Pope guaranteed the debt not to exceed $15 per acre. It was alleged that the lien on the land amounted to about $21 per acre. There were 507 acres which, at $15 per acre represented the Welder debt at $7,605 that had to be discharged. Now at $21 the real debt gives the sum of $10,147, the difference between represented indebtedness that appellee would have to have had to discharge. Now at the jury's finding of $35 per acre for the land, gives a total valuation of $15,717.

Independent of the offset by the notes, the judgment is greatly excessive and supported neither by the pleadings nor the evidence.

The opinion affirming the judgment is withdrawn, and set aside, and a rehearing is granted, and the judgment of the trial court is set aside, and the cause is reversed and remanded.

### On Second Motion for Rehearing.

Appellee filed a separate motion for rehearing, a separate motion for additional findings, and a motion to be allowed to file a remittitur.

For reasons given in our opinion granting the motion for rehearing, it appears that the allegations and proof, and the findings of the jury do not correspond. The pleadings alleged the value of the 507 acres of land to be conveyed to appellant to be worth $23 per acre. The indebtedness agreed to be discharged was $15 per acre.

Appellee was entitled to recover on the breach of the compromise agreement the difference represented between the Welder debt, the taxes, and the amount of the notes he was to give appellants (one of which was for $300 and the other for $2,850, amounting to the aggregate sum of $3,150), and the value of the land at $23 per acre, not the value at $31 per acre, found by the jury, for that was more than sued for. Owing to the confusion growing out of the pleadings of all the parties and findings of the jury, showing the value of the land more than sued for, we do not feel that we should reform the judgment and reverse and here render. A reversal gives the parties an opportunity, if thought desirable, to recast the pleading and more properly join, submit, and try the issues.

Appellee requests the court to give him an opportunity to enter a remittitur and to indicate what the amount shall be. The judgment was for $4,451.

The excess in the judgment grows out of the fact that the calculation was based on the jury's finding at the rate of $31 per acre, $15,717. The highest price sued for was $23 per acre, making $11,661; the difference between the two sums therefore being $4,056. No judgment will be permitted to stand when challenged, based upon the finding of a jury, for an amount greater than sued for. This error is fundamental and requires a reversal.

The fact that appellee, after having specifically pleaded his damages and fixed the value of the land at $23 per acre, it is of no consequence that he placed the general damages at $5,000, alleged to have been sustained by him set out in his prayer, for specific performance.

The consideration at which appellee was to get the 507 acres was at $15 per acre, to which should be added $511 taxes, and the $3,150 notes, and calculate the value of the land at $23 per acre instead of $31 per acre, found by the jury, thus making the amount to be remitted the sum of $4,056. The amount that appellee would be entitled to recover after allowing those credits and his notes, would be $395.

Therefore, if appellee, within 10 days from this date, files a remittitur for the sum of $4,056, the judgment will be affirmed and rendered for appellee for the sum of $395. If, in 10 days from this date, no remittitur is filed, in accordance with this opinion, the judgment of the trial court will be reversed, and the cause remanded for another trial.